# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kourt Security Partners, LLC,**
**Defendant Below, Petitioner**

**FILED**

**March 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-1206** (Monongalia County 15-C-733)

**United Bank, Inc.,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kourt Security Partners, LLC ("Kourt Security"), by counsel Charles J. Kaiser, Jr. and Jeffery D. Kaiser, appeals the Circuit Court of Monongalia County's "Order Granting Plaintiff's Motion for Summary Judgment," entered on November 28, 2016. Respondent United Bank, Inc. ("United Bank"), by counsel Shawn P. George, filed a response. Kourt Security filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

In the underlying litigation in this case, United Bank sought a declaratory judgment that Kourt Security was indebted to it for the amounts due on two loans that United Bank made to another company, MB Security, Inc. ("MB Security"), in 2012. MB Security was a company established by Mitchell Brozik to manage the assets of his former security and alarm business, Secure US, Inc. ("Secure US"). Kourt Security purchased those assets in 2014 from Mr. Brozik's aunt, Betty Parmer. Kourt Security disputed that United Bank had any claim against it, arguing that it was a good faith purchaser of the assets. Prior to the close of discovery, the circuit court granted summary judgment in favor of United Bank, and this appeal followed.

To understand the present dispute, it is necessary to briefly examine several prior financial transactions involving Mr. Brozik and Ms. Parmer. In 2007, Secure US obtained a loan from the predecessor bank of Bank of America. Mr. Brozik then experienced financial difficulties and sought the assistance from a family friend, Milan Puskar, who purchased the Bank of America note for $3.5 million. Mr. Brozik borrowed an additional $900,000 from the Puskar Trust. After Mr. Puskar died in 2011, the Puskar Trust held both debts.

Secure US had been engaged in litigation in federal court with another security company, Security Alarm Financing Enterprises, LLC ("SAFE"). In this federal litigation, SAFE obtained

1

a judgment against Secure US for more than $1.1 million in 2010. In 2012, SAFE attempted to collect on the judgment, and a federal magistrate ordered a foreclosure sale of the Secure US assets for May 16, 2012. The Puskar Trust lien on the Secure US assets was senior to the SAFE judgment. At this point, Ms. Parmer agreed to assist Mr. Brozik with his debts. In April of 2012, Ms. Parmer obtained a loan from Centra Bank (now United Bank) in Morgantown, West Virginia, and purchased the Puskar Trust debt for $2.5 million. As a result, Ms. Parmer stood in the shoes of the Puskar Trust, obtaining all of the rights that it held in the debts.

Ms. Parmer then demanded payment from Mr. Brozik, who responded that he was unable to make the payment. Ms. Parmer then arranged for the Secure US assets to be sold at a foreclosure sale, which occurred on May 5, 2012. At the sale, Ms. Parmer purchased the assets for $4 million, making her the owner of the Secure US assets.[1] As owner of the Secure US assets, Ms. Parmer signed an agreement in August of 2012 granting Mr. Brozik the authority to manage, protect, and borrow upon the assets through a newly-established company, MB Security.

In August and September of 2012, MB Security and Mr. Brozik obtained two loans from United Bank, totaling $827,000, that are relevant to the present case. First, they refinanced a $150,000 vehicle loan. This loan was secured by vehicles already owned or subsequently used in the Secure US business. In the second loan, Mr. Brozik and MB Security borrowed $677,000 from United Bank to satisfy existing creditors and supply working capital for the business. This latter loan was allegedly secured by the Secure US assets, as evidenced by agreements signed by Mr. Brozik as Ms. Parmer's power of attorney.

In September of 2013, Ms. Parmer filed suit against Mr. Brozik and MB Security, among others, claiming that the transactions which led her to own the Secure US assets were conducted without her full understanding and consent. She further alleged that Mr. Brozik used MB Security to convert the Secure US assets for his own use.[2] Thereafter, in that litigation, the circuit court granted Ms. Parmer partial summary judgment, which relieved her of the obligation to comply with the management agreement with MB Security and required Mr. Brozik and MB Security to relinquish control of the former Secure US assets that she owned. In May of 2014, Ms. Parmer entered into a management agreement with Kourt Security to manage the assets.

Also in May of 2014, the federal court in the SAFE litigation held that the SAFE lien on the Secure US assets was not extinguished by the May 5, 2012, foreclosure sale; Ms. Parmer was

---

[1] SAFE ultimately disputed the sale as fraudulent and sued Ms. Parmer.

[2] The jury returned a verdict in favor of Ms. Parmer and awarded her a $1.7 million judgment against Mr. Brozik and MB Security. Ms. Parmer also claimed that United Bank and its loan officer were complicit in the fraud perpetrated by Mr. Brozik, which the circuit court dismissed on summary judgment. This Court affirmed the jury's verdict in its entirety, as well as the dismissal of Ms. Parmer's claims against United Bank and its officer. *See Brozik v. Parmer*, Nos. 16-0292, 16-0400, 16-0238, 2017 WL 65475 (W.Va. Jan. 6, 2017) (memorandum decision). Kourt Security was a party in two of these three consolidated appeals.

liable for the SAFE judgment; and granted SAFE a judgment against Ms. Parmer for $1.1 million. In November of 2014, Kourt Security purchased the Secure US assets from Ms. Parmer.

United Bank filed the present action against Kourt Security in November of 2015, claiming that Kourt Security was liable for the two loans that United Bank made to MB Security in 2012, which were allegedly secured by the Secure US assets that Kourt Security bought from Ms. Parmer in 2014. In its defense, Kourt Security denied that United Bank possessed any enforceable liens encumbering the Secure US assets. Additionally, Kourt Security filed interrogatories and requests for production for documents related to the origination, processing, management, and enforcement of the United Bank loans and security interests at issue.

United Bank moved for summary judgment, arguing that it had a first priority secured lien in the Secure US assets at the time Kourt Security purchased them; that the lien survived the sale and remains intact; that Kourt Security bought the Secure US assets subject to United Bank's senior security interest; and that United Bank was entitled to take possession of the collateral. United Bank argued that it never authorized the disposition of the Secure US assets free of its security interest. Kourt Security argued it was a good faith purchaser of the assets and United Bank has no claim against it. By order entered on November 28, 2016, the circuit court granted United Bank's motion for summary judgment, ruling that United Bank had a perfected security interest in the Secure US assets at the time Ms. Parmer sold them to Kourt Security, which United Bank had never sold or assigned to anyone else. Kourt Security now appeals to this Court.

## Discussion

According to Rule 56 of the West Virginia Rules of Civil Procedure, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). We have also held that

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 459 S.E.2d 329 (1995). This Court reviews a circuit court's entry of summary judgment de novo. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

Additionally, "[a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien[.]" W.Va. Code. § 46-9-315(a)(1). Under West Virginia Code §§ 46-9-609(a)(1) and (b)(1), a secured party may take possession of the collateral after default without judicial process if it proceeds without a breach of the peace.

3

On appeal, Kourt Security argues that (1) the circuit court granted summary judgment without allowing it to conduct meaningful discovery regarding the subject loans; (2) the circuit court failed to address how the November 2014 sale did not eliminate all subordinated lien holders, and/or transfer the interest of the lienholders to the proceeds of the sale; and (3) the circuit court's finding that United Bank had a "first lien" priority in the assets was not substantiated by the record. We address these arguments in turn.

First, Kourt Security argues that the circuit court prematurely considered United Bank's summary judgment motion because the only information Kourt Security had regarding the subject loans was gleaned from the documents included with United Bank's complaint. Kourt Security contends that it sought discovery to establish whether United Bank had a valid security interest in Ms. Parmer's property; whether United Bank was complicit with Mr. Brozik in using Ms. Parmer's property as security for the loans; and whether United Bank knew that Mr. Brozik exceeded his authority in the management agreement between MB Security and Ms. Parmer.

Upon our review, we find no error in the circuit court's entry of summary judgment without permitting the discovery sought by Kourt Security. As United Bank correctly argues, Kourt Security seeks to stand in the shoes of Ms. Parmer to challenge United Bank's security interest, a fact of which Kourt Security was aware when it purchased the assets. *See* W.Va. Code § 46-9-315(a). Any claims that Ms. Parmer had regarding these loans have been resolved by this Court. *See Brozik v. Parmer*, Nos. 16-0292, 16-0400, 16-0238, 2017 WL 65475 (W.Va. Jan. 6, 2017) (memorandum decision). Put simply, Kourt Security seeks to litigate the underlying loans to MB Security, which it has no standing to do. The question presented by United Bank's summary judgment motion in the present case was whether United Bank held a perfected security interest in the collateral for these loans; the circuit court properly denied Kourt Security's attempt to conduct discovery irrelevant to this question.

Kourt Security's second assignment of error is that the circuit court failed to address how the November 2014 sale did not eliminate all subordinated lien holders, and/or transfer the interest of the lienholders to the proceeds of the sale. The false premise upon which Kourt Security rests this argument is that the sale was a judicial sale, rather than a purely private sale.[3]

---

[3] Kourt Security contends that the sale was a private sale "sanctioned" by the federal court in the SAFE litigation, and conducted pursuant to West Virginia Code § 38-4-20, which provides, in relevant part, as follows:

> In any case where an officer shall distrain or levy upon personal property, otherwise than under an execution or order issued by a justice [magistrate], or under an attachment, and in any case in which he may be directed to sell personal property by an order of a court or judge, unless such order prescribes a different course, he shall fix upon a time and place for the sale thereof . . . [.]

Kourt Security contends that it is entitled to retain the assets it purchased because it acted in good faith. *See* W.Va. Code § 46-9-617(b) ("A transferee that acts in good faith takes free of the (continued . . .)

Had this been a judicial sale, notice of the sale would have been published, and an officer of the court would have conducted the sale. This did not happen in this case. Instead, the record reveals that the federal court in the SAFE litigation granted Ms. Parmer's and SAFE's motion to adjourn the judicial sale in order to conduct a private sale. Then, in the private sale, Ms. Parmer and Kourt Security reached an agreement with SAFE in which Kourt Security purchased the Secure US assets in November of 2014. Importantly, United Bank never authorized disposition of the assets free and clear of its security interest. Under West Virginia Code § 46-9-315(a), United Bank's security interest survived the sale to Kourt Security.

In its final assignment of error, Kourt Security argues that the circuit court's finding that United Bank had a "first lien" priority in the assets was not substantiated by the record. We disagree. There are no other security interests that have been asserted in this, or any other, proceeding. The only salient issue before the circuit court was whether United Bank's interest continued after Ms. Parmer sold the Secure US assets to Kourt Security. Upon our review, the circuit court's findings in this regard are sufficient. Specifically, the court found that, between the time Ms. Parmer bought the assets in May of 2012 and her sale to Kourt Security in November of 2014, MB Security borrowed $827,000 from United Bank, pledging the assets as collateral; that Kourt Security was aware of United Bank's loans to MB Security; that United Bank had a perfected security interest in and to all of the assets at the time of the sale to Kourt Security; and United Bank never sold or transferred its interest. Accordingly, under the facts of this case, we find no error in the circuit court's finding that United Bank had a "first lien" priority in the assets.

### Conclusion

For the foregoing reasons, we affirm the Circuit Court of Monongalia County's November 28, 2016, order granting United Bank's motion for summary judgment.

Affirmed.

**ISSUED:** March 9, 2018

**CONCURRED IN BY:**

Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis

---

rights and interests described in subsection (a) of this section, even if the secured party fails to comply with this article or the requirements of any judicial proceeding.").